1

2

3

**FILED**

4

MAY 2 7 2004

5

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                          ----ooOoo----

11

12  JAIME HUGHES, MARY CORONADO,
    AUDREY MILLS, VIRGINIA
13  CARDOZA, KAREN DELUCCHI,
    JOLENE GIBSON, BARBARA
14  HEDRICK, SUZANNE HENNING, WILL
    JOHNSON, LINDA MAGER, MARIA
15  MACIAS, CARL MORROW, CANDICE
    PRICE, VIRGINIA RUIZ, CARMEN
16  SIMMONS, TREASA TREDWELL,
    MARINA TORRES, SHEILA WALL,
17  LORIE WEISS and KATHI LYNN
    CORONADO,

18                                        NO. CIV. S 03-0166 MCE DAD
            Plaintiffs,
19
                                          MEMORANDUM AND ORDER
20      v.

21  CITY OF STOCKTON and DOES 1
    through 100, in their
22  individual capacities,

23          Defendants.

24                          ----ooOoo----

25      Plaintiffs, who are employed by Defendant City of Stockton

26  ("City") as fire department dispatchers, have brought the present

27  action for unpaid overtime compensation pursuant to the Fair

28  Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA").  Both

1  Plaintiffs and the City now move for summary judgment with
2  respect to whether any actionable FLSA violation has been
3  established, and whether Plaintiffs are entitled to recover
4  liquidated damages, or damages over a three year limitation
5  period, in accordance with 29 U.S.C. §§ 216(b), 260, and 255(a).
6  Alternatively, both Plaintiffs and the City also seek partial
7  summary judgment as to the above issues on an individual basis.

8      For the reasons set forth below, summary judgment is denied
9  as to both motions.  Partial summary judgment is also denied,
10 except that Plaintiffs have not shown that the City acted
11 willfully and intentionally in violating the FLSA so as to
12 entitle Plaintiffs to recover under an extended three year
13 statute of limitations.  Consequently the City is entitled to
14 partial summary judgment on that issue.

15
16                         **BACKGROUND**
17

18     Plaintiffs are twenty fire department dispatchers, formally
19 known as Fire Telecommunicators.  Seventeen of these individuals
20 are in non-supervisory positions.  All are non-exempt employees
21 who work a "Kelly" schedule consisting of staggered 24-hour
22 shifts.

23     Prior to 1986, both police and fire dispatchers in Stockton
24 worked out of the same facility on 12-hour shifts.  After 1986,
25 however, when the fire dispatchers moved to the City's central
26 downtown fire station, they have worked 24-hour shifts, except
27 for a brief experiment in late 2000 and early 2001 when four fire
28 dispatchers were placed on twelve hour shifts for a few months.

                                2

1 At present all fire dispatchers work on a "Kelly" schedule
2 whereas the police dispatchers work 10-hour shifts.

3     The "Kelly" schedule entails shifts alternating with days
4 off in such a way that dispatchers work either 48 hour or 72 hour
5 weeks.  This work pattern, which the City claims is completely
6 predictable over a nine-day cycle, allegedly produces annual
7 hours totaling 2912.  When this figure is divided by the number
8 of weeks in a year, the City computes an average weekly number of
9 hours, for each fire dispatcher working the "Kelly" schedule, at
10 56.

11     Prior to 2000, fire dispatchers were paid overtime on all
12 hours exceeding 40 in a given week which meant that their checks
13 varied depending on whether the pay period included a "fat" week
14 with three of the 24-hour shifts, or instead encompassed just two
15 shifts.  That variable rate of compensation changed after 2000.

16     Between July and August 2000, labor negotiations ensued
17 between the City and the two unions representing the dispatchers,
18 the Stockton City Employees Association ("SCEA", for the rank and
19 file dispatchers), and the Stockton B & C Management Employees
20 Association ("SBCMEA", for the supervisorial dispatchers).  At
21 that time the City anticipated that both fire and police
22 dispatchers would eventually again be housed out of the same
23 physical location, and it wanted to work towards integrating
24 their functions.  Several issues were addressed during those
25 negotiations, including Police Telecommunicators' complaints that
26 they were paid less than their fire counterparts and the need for
27 potential flexibility in reassigning some of the fire dispatchers
28 to 10-12 hour shifts instead of the longer 24-hour shift.

1    George Bist served as the City's chief negotiator.  Wally
2  Storm attended the meetings as the bargaining representative of
3  the SCEA, and at least two of the named plaintiffs to this
4  lawsuit (Lori Weiss and Marina Torres) also participated.  May
5  Prosser-Strong was the SBCMEA representative.

6    The City contends that these negotiations ultimately
7  produced an agreement as to the annual compensation then earned
8  by the fire dispatchers on their 24-hour shifts, including
9  regularly paid overtime.  According to the City, the regularly
10 scheduled overtime (on a 56 hour a week average) was folded into
11 the fire dispatchers previous base wage such that the fire
12 dispatchers' new salary included both 40 hours of straight time
13 as well as overtime for all regularly scheduled hours in excess
14 of 40.  The City further contends that, as a result of the
15 alleged agreement, a previous three-hour sleep time deduction for
16 each 24-hour shift was eliminated.

17   Additionally, in order to ensure that any fire dispatchers
18 moved to 10-12 hour shifts were not financially penalized, they
19 were to receive the same base salary as their 24-hour
20 counterparts whose salary also included the regularly scheduled
21 overtime specified above.  Police dispatchers working 40-hour
22 weeks also received the same compensation package.  In essence,
23 this constituted a fairly sizable pay increase for those police
24 dispatchers, with fire telecommunicators working 24-hour shifts
25 continuing to receive the same compensation for a longer work
26 week.

27   While the pay increase to the police dispatchers was
28 memorialized by a City Resolution, the alleged agreement reached

4

with the fire dispatchers concerning the terms and conditions of
their compensation was not similarly formalized.  No resolution,
Memorandum of Understanding ("MOU") or side letter with the fire
dispatchers was reached with respect to what Plaintiffs
characterize as a lower hourly rate paid to them, as opposed to
police dispatchers working fewer hours.  (See Storm Deposition,
45:16-47:10).  Plaintiffs claim this runs counter to the implicit
terms of the City Resolution authorizing increased police
dispatcher pay in order to eliminate salary "disparity" for "the
same class of work."  (Plaintiffs' Undisputed Fact No. 67; See
Stockton City Counsel Resolution 00-0559, Exhibit "C" to the
Declaration of George Bist).  Plaintiffs further assert that this
also is inconsistent with the City's regular practice of reducing
agreements with labor organizations to writing, and presenting an
appropriate resolution to the City Council for approval (as
occurred with respect to the police dispatcher salary increase).
(Plaintiffs' Additional Undisputed Fact Nos. 2-4).  Finally,
Plaintiffs point out that in the absence of any written agreement
or letter of understanding, the purported salary arrangement with
the fire dispatchers was never put to a vote by the concerned
employees.  (Id. at 5-6).

In arguing that the City's arrangement for compensating them
for overtime violates the FLSA, Plaintiffs contend that no true
hourly rate apart from an annualized salary was ever established.
Plaintiffs further contend that the City's salary schedules,
personnel action forms, and pay stubs do not reflect that the
base pay derived from that annual salary was intended to provide
compensation for more than 40 hours per week.  (See Plaintiffs'

5

Undisputed Fact No. 33).  Plaintiffs' pay stubs, for example, do
not reflect any overtime whatsoever unless Plaintiffs work in
excess of their regularly scheduled shifts, which total either 48
or 72 hours in any given week.  (Id. at 81-82).  Additionally,
Plaintiffs take issue with the City's claim that sleep time is no
longer deducted from their shift compensation.

The City, on the other hand, asserts that while the mode of
paying fire dispatchers changed, their actual salary remained
unaltered and continued to include compensation for all overtime
worked.  According to the City, all of the individuals involved
in the negotiations agree that the fire dispatchers' new base
salary included both straight pay and all regularly scheduled
overtime.[1]   This contention is further supported by the fact
that the base salary for a Fire Telecommunicator I increased from
$2410/month in January of 2000 to $3501/month by January of 2001.
Because the fire dispatchers did not otherwise receive a raise
during this time period, the City asserts that this new figure
necessarily includes overtime.

Through this lawsuit, Plaintiffs claim that because their
paychecks do not specifically break-out the regularly scheduled
overtime, the basic pay including that overtime has to be deemed
as only compensating them for the first 40 hours of work.  They
argue that the City cannot average overtime earnings, as they
have done, under the FLSA, and assert they understood their base
salary to only compensate for a 40-hour work week.  (See
Plaintiffs' Undisputed Fact No. 24).  Plaintiffs contend that no

[1]See Storm Deposition, 40:8-19; Prosser-Strong Declaration,
¶ 4, Exhibit "B", Bist Declaration, ¶¶ 8-9).

6

enforceable agreement was ever reached as to the new salary arrangement, despite the fact that their bargaining representatives as well as the involved City officials appear to indicate otherwise.   Alternatively, Plaintiffs contend that even if an agreement was reached it is unenforceable as violative of the FLSA.

Both Plaintiffs and the City now move for summary judgment, or in the alternative for summary adjudication as to individual issues, on grounds that their respective positions entitle them to that relief.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Rule 56 also allows a court to grant summary adjudication on part of a claim or defense.  See Fed. R. Civ. P. 56(a) ("A party seeking to recover upon a claim ... may ... move ... for a summary judgment in the party's favor upon all or any part thereof."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995); France Stone Co., Inc. v. Charter

1  <u>Township of Monroe</u>, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

2      The standard that applies to a motion for summary

3  adjudication is the same as that which applies to a motion for

4  summary judgment.  See Fed. R. Civ. P. 56(a), 56(c); <u>Mora v.</u>

5  <u>ChemTronics</u>, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

6      In considering a motion for summary judgment, the court must

7  examine all the evidence in the light most favorable to the non-

8  moving party.  <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655

9  (1962).  Once the moving party meets the requirements of Rule 56

10  by showing that there is an absence of evidence to support the

11  non-moving party's case, the burden shifts to the party resisting

12  the motion, who "must set forth specific facts showing that there

13  is a genuine issue for trial."  <u>Anderson v. Liberty Lobby, Inc.</u>,

14  477 U.S. 242, 256 (1986).  Genuine factual issues must exist that

15  "can be resolved only by a finder of fact, because they may

16  reasonably be resolved in favor of either party."  <u>Id.</u> At 250.

17  In judging evidence at the summary judgment stage, the court does

18  not make credibility determinations or weigh conflicting

19  evidence.  <i>See</i> <u>T.W. Elec. V. Pacific Elec. Contractors Ass'n</u>, 809

20  F.2d 626, 630-631 (9th Cir. 1987), citing <u>Matsushita Elec. Indus.</u>

21  <u>Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

22

23                          **ANALYSIS**

24

25      The facts presented by this case are extraordinarily

26  complicated, must necessarily be viewed in an historical context

27  over a period of years, involve detailed calculation and

28  comparison, and hinge on conflicting evidence and/or testimony

1  offered with respect to what was or was not agreed by the
2  parties.   Even at first glance, such circumstances would not
3  appear amenable to disposition on summary judgment.

4      With respect to the fundamental issue of whether FLSA
5  violations occurred with respect to the manner in which the fire
6  dispatchers were compensated,[2] however, the initial question that
7  must be addressed is whether the City entered into any
8  enforceable agreement in that regard during its 2000 labor
9  negotiations.   The City takes the position that an agreement did
10 occur that properly encompassed all regularly scheduled overtime,
11 and consequently passes muster under the FLSA.   Plaintiffs, on
12 the other hand, maintain that the lack of any enforceable
13 agreement precludes the City from arguing that the annualized
14 fire dispatcher salary covers anything beyond the first 40 hours
15 in any given work week, and argue that an FLSA violation occurred
16 on that basis.   Consequently the purported 2000 agreement, or
17 lack thereof, is central to the FLSA position advanced by both
18 parties.

19     There are numerous triable issues of fact with respect to
20 any salary agreement that preclude summary judgment in favor of
21 either side in this case.   While there is testimony from both the
22 union representatives and City negotiators that a deal was indeed
23 made, it may be equally significant that the alleged agreement
24 was not reduced to writing or approved by the City Council.
25 Another factor which may militate against any agreement is

26 ────────────────────────
27     [2]Plaintiffs allege a violation of 29 U.S.C. § 207, which
   required that non-exempt employees be paid at a rate of 1.5 times
28 their regular pay for all hours worked over 40 in a seven day
   period.

1    Plaintiffs' argument that overtime compensation is not reflected
2    in the salary schedules, personnel action forms, or even
3    Plaintiffs' payroll stubs.  On the other hand, the fact that
4    Plaintiffs essentially made the same amount of money both before
5    the negotiations took place (when overtime was being computed
6    into their paychecks on a week-to-week basis) and afterwards
7    bodes well for the City's argument that the additional salary
8    amount necessarily represented payment for overtime in the
9    absence of any other salary increase.  The bottom line, however,
10   is that weighing these competing considerations is well beyond
11   the province of summary judgment.[3]

12       In addition, even if one goes beyond the enforceability of
13   the alleged 2000 agreement itself, Plaintiffs also contend that
14   the City violates the FLSA by automatically deducting three hours
15   of sleep time from every 24-hour shift.  They allege that 29
16   C.F.R. § 785.22 requires five hours of sleep before any deduction
17   for a sleeping period may be taken, and that the City's current
18   failure to account for sleeping time precludes any salary offset
19   from being taken.  The City argues that no deduction whatsoever
20   is taken for sleep time, despite the fact that the salary
21   proposal for telecommunicator compensation (Exhibit 9 to the
22   Parrott Deposition, attached as Exhibit "E" to the Declaration of
23   Stephanie A. Miller) appears to reflect such deductions.  Again,
24   disparities of this nature raise triable issues of fact that

25

26       [3]Given the uncertainties raised with respect to the 2000
     agreement itself, the Court declines to consider at this time
27   whether or not the agreement would have withstood scrutiny under
     the FLSA, if one assumes that the alleged agreement was indeed
28   finalized.

                                  10

1 | cannot be resolved on summary judgment.

2 |     Aside from the issue of FLSA violations themselves, both
3 | sides also request summary adjudication on issues pertaining to
4 | the recoverability of damages under FLSA.  The first issue in
5 | that regard concerns the statute of limitations pursuant to which
6 | Plaintiffs may recover unpaid overtime compensation.  Generally,
7 | that limitations period is two years, except that actions arising
8 | from a "willful" violation of the FLSA extends the statute of
9 | limitations to three years.  See 29 U.S.C. § 255(a).  Plaintiffs
10 | have the burden of showing the requisite willfulness by
11 | demonstrating that the City knew or showed reckless disregard for
12 | whether its conduct was prohibited by the FLSA.  *See* McLaughlin
13 | v. Richland Shoe Co., 486 U.S. 128, 133 (1988).  Willfulness,
14 | under this standard, cannot be found on the basis of mere
15 | negligence.  Id. at 135.

16 |     Plaintiffs have not met their burden in proving that the
17 | City acted willfully in any potential FLSA violation encompassed
18 | by this case.  Instead, the evidence points to an attempt by the
19 | City to negotiate fire dispatcher compensation issues with union
20 | bargaining representatives.  Even if ultimately found misguided,
21 | any flaws in the agreement reached, or even the lack of a binding
22 | agreement altogether, do not raise to the level of willfulness
23 | required to trigger the longer three-year statute of limitations.

24 |     The second, and to a certain extent, related issue pertains
25 | to the availability of liquidated damages in this case.  Under
26 | the FLSA, an employer is liable for all unpaid overtime
27 | compensation and an additional equal amount as liquidated damages
28 | (29 U.S.C. § 216(a) unless the employer had a good faith belief

1 that it was in compliance with the FLSA and had reasonable
2 grounds for that belief. 29 U.S.C. § 260; <u>Bratt v. County of Los</u>
3 <u>Angeles</u>, 912 F.2d 1066, 1071 (9th Cir. 1990), *cert. denied*, 498
4 U.S. 806 (1991). Absent such a showing liquidated damages are
5 mandatory. <u>Id</u>.

6       The statutory requirements of good faith belief in FLSA
7 compliance, and reasonable grounds for that belief, have both
8 subjective and objective components. To satisfy the subjective
9 "good faith" component, the City must show that it had an honest
10 intention of ascertaining what the FLSA required and that it
11 acted in accordance with that contention. <u>Id</u>. at 1072. The
12 question of "honest intention" is an essentially factual inquiry.
13 <u>Id</u>. Further, the additional requirement that the City had
14 reasonable grounds for believing that its conduct complies with
15 the FLSA imposes an objective standard. <u>Id</u>. If the City cannot
16 come forward with "plain and substantial" evidence to satisfy
17 both the subjective and objective components of the liquidated
18 damages test, the district court is without discretion to deny
19 such damages. <u>Williams v. Tri-County Growers, Inc.</u>, 747 F.2d
20 121, 129 (3d Cir. 1984). In order to satisfy this considerable
21 burden the City must make "an affirmative showing of a genuine
22 attempt to ascertain what the law requires." <u>Harris v. District</u>
23 <u>of Columbia</u>, 749 F. Supp. 301, 302 (D.D.C. 1990), citing <u>Dove v.</u>
24 <u>Coupe</u>, 759 F.2d 167, 175-76 (D.D.C. 1985).

25       Here the City's evidence falls short of satisfying these
26 prerequisites. The declarations proffered by the City state in
27 conclusory fashion that City officials "at all times believed the
28 City's compensation practices complied with the requirements of

1   the FLSA", or that the City simply intended to pay FLSA mandated

2   overtime.[4]  While this evidence cannot be altogether disregarded,

3   it is nonetheless not enough to compel summary adjudication on

4   this issue in the City's favor.

5        In Masters v. City of Huntington, 800 F. Supp. 355 (S.D. W.

6   Va. 1982), the court found that the City of Huntington's

7   officials did make the requisite "good faith" showing where

8   undisputed testimony demonstrated that City personnel officials

9   met with both the City's attorney and fire chief in order to

10  determine whether the City was in compliance with the

11  requirements of the FLSA.  In addition, in assessing the pay

12  structure at issue in Masters, the City sought advice on FLSA

13  compliance from Department of Labor officials, Department of

14  Labor regulations, and municipal organizations to which the City,

15  or its officials, belonged.  Id. at 362.

16       In this case, no similar showing has been made that would

17  entitle the City of Stockton to summary judgment on the

18  //

19  //

20  //

21  //

22  //

23  //

24

25  _____

26       [4]See Declaration of William Gary Gillis (Fire Chief), ¶ 16;
    Declaration of Terry Parker (Director of Personnel), ¶ 8; see
    also Declarations of Dwane Milnes (former City Manager, ¶ 24 and
27  George Bist (employee relations officer), ¶17 ("I am very aware
    of FLSA overtime requirements, and it was my and the City's
28  intention always to pay FLSA overtime as required by law.").

1  liquidated damages issue,[5] particularly since the burden of

2  showing good faith rests with the City.   On the other hand,

3  conclusive evidence that the City did act in bad faith has also

4  not been demonstrated by Plaintiffs for the same reasons that

5  Plaintiffs cannot prevail for purposes of summary judgment on the

6  extended statute of limitations issue discussed above.   The

7  propriety of liquidated damages recovery is "closely related" to

8  the wilfulness germane to determination of the applicable

9  limitations period.   Dole v. Elliott Travel & Tours, Inc., 942

10  F.2d 962, 967 (6th Cir. 1991).

11  //

12  //

13  //

14  //

15  //

16  //

17  //

18  //

19  //

20  //

21  ─────────────────────

22  [5]While the City claims, in the negative, that no Department of Labor official, attorney, or anyone else advised it that fire dispatchers were not being paid in accordance with the FLSA in

23  the context of the labor negotiations at issue, that is not the same as the "affirmative showing" of compliance with FLSA

24  requirements needed in order to make a showing of "good faith" sufficient to avoid liquidated damages. Harris v. District of

25  Columbia, 749 F.2d at 175-76. In addition, information received by Plaintiffs from the Department of Labor in 1999, prior to the

26  2000 negotiations in question, is also not sufficient to establish "good faith" for purposes of summary judgment. Nor

27  does the City's contention that its supervisors and managers received general FLSA training in 2002, after the negotiations at

28  issue took place, suffice.

14

1

2

3 **CONCLUSION**

4

5      Based on the foregoing, the motions for summary judgment

6 filed by both Plaintiffs and the City in this matter are denied.[6]

7 Partial summary judgment is also denied, except as to the City's

8 request that the applicable statute of limitations be deemed two

9 years.   Summary adjudication is granted to the City on that

10 issue.

11

12      IT IS SO ORDERED.

13 DATED: May 26, 2004

14

15 MORRISON C. ENGLAND, Jr.
   UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24      [6]The Court notes that extensive evidentiary objections have
   been made by both sides to evidence posited in support of these
25 motions.  Much of the evidence to which those objections are
   directed was not considered by the Court in ruling on these
26 motions and hence the objections to that evidence need not be
   considered herein.  To the extent evidence was relied upon by the
27 Court as set forth in this Memorandum and Order, the objections
   filed by both parties are overruled for purposes of these
28 motions.

15

United States District Court
for the
Eastern District of California
May 27, 2004


* * CERTIFICATE OF SERVICE * *


2:03-cv-00166


Hughes

    v.

City of Stockton

_____

I, the undersigned, hereby certify that I am an employee in the Office of
the Clerk, U.S. District Court, Eastern District of California.

That on  May 27, 2004, I SERVED a true and correct copy(ies) of
the attached, by placing said copy(ies) in a postage paid envelope
addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, by placing said copy(ies) into an inter-office
delivery receptacle located in the Clerk's office, or, pursuant to prior
authorization by counsel, via facsimile.


     Timothy Keith Talbot                   AS/MCE
     Carroll Burdick and McDonough
     1007 7th Street, Second Floor
     Sacramento, CA  95814-1708

     Arthur A Hartinger
     Meyers Nave Riback Silver and Wilson
     555 12th Street, Suite 1500
     Oakland, CA  94607


                                      Jack L. Wagner, Clerk


                                      BY: /
                                          Deputy Clerk